David R. Baker, #007338
D. Alexander Baker, #027164
**WITHEY MORRIS**
A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW
2525 E. ARIZONA BILTMORE CIRCLE
SUITE A-212
PHOENIX, AZ 85016
TELEPHONE (602) 230-0600
dave@witheymorris.com
alex@witheymorris.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Y & G CAPITAL PROJECTS, LLC, an Arizona Limited Liability Company; ZEPHYR HOLDINGS, LLC., a Wyoming Limited Liability Company; | Case No. |
| | **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| ANDERSON CAPITAL GROUP, LLC, a Delaware Limited Liability Company; EDWARD HAKOBYAN AND JANE DOE HAKOBYAN, husband and wife; DOUGLAS BOWEN AND JANE DOE BOWEN, husband and wife; CAROLINA BUQUING AND JOHN DOE BUQUING, wife and husband; 6792350 MANITOBA LIMITED, dba COMMUNITY DEVELOPMENT FIRST, a business entity, form unknown; JOHN and JANE DOES I-V; ABC CORPORATIONS I-V; ABC PARTNERSHIP I-V; ABC LIMITED LIABILITY COMPANIES I-V, | *(1) Breach of Contract;* <br> *(2) Breach of Implied Covenant of Good Faith and Fair Dealing;* <br> *(3) Negligent Misrepresentation;* <br> *(4) Concealment;* <br> *(5) Fraud* |
| Defendants. | |

Plaintiffs Y & G Capital Projects, LLC, an Arizona limited liability company (hereinafter referred to as "Y & G") and Zephyr Holdings, LLC, a Wyoming limited liability company (hereinafter referred to as "Zephyr") (Y&G and Zephyr hereinafter sometimes collectively referred to as "Plaintiffs") bring this action against Defendants Anderson Capital Group, LLC, a Delaware limited liability company (hereinafter referred to as "Anderson"),

Edward Hakobyan and Jane Doe Hakobyan, husband and wife (hereinafter collectively referred to as "Hakobyan"), Douglas Bowen and Jane Doe Bowen, husband and wife (hereinafter collectively referred to as "Bowen"), Carolina Buquing and John Doe Buquing, wife and husband (hereinafter collectively referred to as "Buquing"), and Community Development First (hereinafter referred to as "CDF") (the foregoing hereinafter sometimes collectively referred to as "Defendants"), as follows:

## THE PARTIES AND JURISDICTION

1.    Y & G is, and at all times mentioned herein was, a limited liability company engaged in the acquisition of real property and the development of luxury spa and wellness facilities, organized under the laws of the State of Arizona.

2.    At all relevant times, Y & G was the manager of Zephyr.

3.    Zephyr is, and at all times mentioned herein was, a limited liability company engaged in the acquisition of real property and the development of luxury spa and wellness facilities, organized under the laws of the State of Wyoming, and doing business in the State of Arizona as Zephyr Development, LLC.

4.    Anderson is, and at all times mentioned herein was, a limited liability company engaged in the business of providing funding for the acquisition of real property, organized under the laws of the State of Delaware.

5.    6792350 MANITOBA LIMITED, dba Community Development First (hereinafter referred to as "CDF"), is, and at all times mentioned herein was, a business entity engaged in the business of assisting in providing funding for the acquisition of real property.

6.    Hakobyan is, and at all times mentioned herein was, the manager of Anderson, and residents of the State of California.

7.    All actions taken by Edward Hakobyan were taken for the benefit his marital community.

8.    Bowen is, and at all times mentioned herein was, the Chief Executive Officer of CDF and a resident of the Province of Manitoba, Canada, and doing business in

1  the State of Arizona.

2          9.     All actions taken by Douglas Bowen were taken for the benefit his marital

3  community.

4          10.    Buquing is, and at all times mentioned herein was, the Executive Director

5  of CDF and a resident of the Province of Manitoba, Canada, and doing business in the State

6  of Arizona.

7          11.    All actions taken by Carolina Buquing were taken for the benefit her

8  marital community.

9          12.    Defendants John and Jane Does I-V, ABC Corporations I-V, ABC

10 Partnerships I-V, and ABC Limited Liability Companies I-V are persons, corporations,

11 partnerships, and limited liability entities who are involved in the dispute underlying this

12 lawsuit.  The true names of such Defendants are presently unknown to Plaintiffs, but will be

13 inserted by amendment after such is ascertained.

14         13.    This Court has subject matter jurisdiction over this action in accordance

15 with 28 U.S.C. Section 1332(a) inasmuch as the matter in controversy exceeds $75,000,

16 exclusive of attorneys' fees and costs, and there is diversity of citizenship between the

17 parties.

18                              **GENERAL ALLEGATIONS**

19         14.    Plaintiff Zephyr, managed by Plaintiff Y & G, was in the process of

20 acquiring real property in the City of Sedona, State of Arizona (hereinafter referred to as the

21 "Property"), in order to develop a luxury resort and spa under the name of the Sedona West

22 Resort & Spa (hereinafter referred to as the "Resort & Spa").

23         15.    The Resort & Spa was to consist of a three hundred (300) room hotel,

24 conference center, village, and wellness center.

25         16.    The loan amount required to cover the purchase price for the Property and

26 related expenses was thirty-five million dollars ($35,000,000.00) (USD).

27         17.    Plaintiffs had secured an agreement from a non-party, Northlight, to

28 provide a loan for the Property purchase.

1    18.    However, in an effort to secure better terms for a loan, Plaintiffs reached

2    out to Anderson for funding (either directly or via the broker CDF).

3    19.    Initially, the offer from Anderson (via CDF) was not accepted by the

4    Plaintiffs, and Plaintiffs advised Anderson and CDF that they would utilize the funding from

5    Northlight.

6    20.    Upon being advised that Anderson would not be selected to fund the

7    purchase, Anderson (via CDF) made a new offer of terms to Plaintiffs.

8    21.    On July 31, 2017, Defendant Bowen, on behalf of Anderson and

9    Hakobyan as President and CEO of Anderson, conveyed an offer of terms to Plaintiffs. A

10   true and correct copy of the July 31, 2017 offer is attached hereto and incorporated herein as

11   **Exhibit A**.

12   22.    Zephyr, by and through its manager, Y & G, and its manager, Greg

13   Genereux, accepted the written offer on July 31, 2017. A true and correct copy of the fully

14   executed offer and acceptance is attached hereto and incorporated herein as though fully set

15   forth, as **Exhibit B**.

16   23.    In the July 31, 2017 offer, Anderson stated that it anticipated funding the

17   loan on or before August 31, 2017, subject to receiving the necessary executed guarantee

18   documentation, land title information and escrow instructions from Title Company in

19   Arizona.

20   24.    No other conditions for Anderson's performance were set forth in the

21   offer.

22   25.    On August 27, 2017, Anderson issued a Letter of Commitment (hereinafter

23   referred to as the "LOC") for the thirty-five million dollar ($35,000,000.00) loan.

24   26.    In the LOC, Anderson states that it will not be able to meet the August 31,

25   2017 funding date due to "circumstances beyond our control however we are now set for

26   closing on or before September 8, 2017." A true and correct copy of the Letter of

27   Commitment is attached hereto and incorporated herein as though fully set forth, as **Exhibit**

28   **C**.

27.     There is no mention or explanation in the LOC of what the "circumstances" are that prevented the August 31, 2017 closing.

28.     On September 5, 2017, Bowen, on behalf of Anderson, advised via email that all conditions precedent to funding have been met and acknowledges that the loan is clear to fund.

29.     Plaintiffs fully expected that the loan would fund and the closing would take place on September 8, 2017, as promised and agreed as per the LOC.

30.     The loan did not fund on September 8, 2017, as set forth in the LOC.

31.     The failure of the loan to fund and the closing to take place caused the Sellers of the Property to notify the Plaintiffs of their intent to declare a default.

32.     On or about September 15, 2017, Zephyr issued a Notice of Default (hereinafter referred to as the "Notice of Default") to Anderson for the failure to fund the loan on September 8, 2017, therein (1) indicating that Zephyr had fully performed all of its duties and obligations as set forth in the LOC, (2) declaring Anderson to be in default of its funding obligations, (3) advising Anderson that its failure to fund would result in the Sellers of the Property declaring that Plaintiffs were in default of the purchase agreement, and (4) giving Anderson one day to rectify the default. A true and correct copy of the Notice of Default is attached hereto and incorporated herein as though fully set forth, as **Exhibit D**.

33.     In addition to the Notice of Default, Counsel for Plaintiff Zephyr at the time, Sacks Tierney, sent a letter to Anderson regarding the default on September 15, 2017, demanding performance via funding of the loan on or before September 18, 2017. A true and correct copy of the September 15, 2017 letter is attached hereto and incorporated herein as though fully set forth, as **Exhibit E**.

34.     Anderson did not rectify the failure to fund within the time prescribed in the Notice of Default, and as of the drafting of this Complaint has failed to perform as agreed.

35.     The Sellers have advised the Plaintiffs that their purchase agreement relating to the Property has been voided due to the failure to fund, and the Sellers have

1    another buyer with whom they are negotiating the sale of the very unique Property.

2           36.      The Plaintiffs have now been advised that Anderson did not perform as

3 contracted because Anderson's funds were placed on hold by Barclays Bank, UK, due to a

4 significant compliance issue.

5           37.      Plaintiffs believe and based upon that belief herein allege that Anderson

6 and CDF knew that Barclay's Bank, UK, had advised Defendants at all times relevant hereto,

7 and thus that Defendants knew, that they would not be able to fund the loan but failed to

8 disclose any of this information to the Plaintiffs prior to the initial planned closing date of

9 August 31, 2017, and that the latter funding date of September 8, 2017 would also not be

10 met.

11           38.      Hakobyan knew that Anderson did not have the immediate ability to fund

12 the Plaintiffs' loan at the time that he signed the July 31, 2017 offer.

13           39.      The offer to fund on or before August 31, 2017 was an intentional

14 misrepresentation made by Hakobyan designed solely to induce the Plaintiffs into accepting

15 the offer.

16           40.      Bowen and Buquing knew that Anderson did not have the immediate

17 ability to fund the loan at the time that Bowen conveyed the offer to the Plaintiffs on July 31,

18 2017.

19           41.      The conveyance of the offer to fund by Bowen to the Plaintiffs with the

20 offer to fund on or before August 31, 2017 was an intentional misrepresentation made by

21 Bowen designed solely to induce the Plaintiffs into accepting the offer.

22           42.      Plaintiffs relied on the representations made by Hakobyan, Bowen, and

23 Buquing, as individuals and on behalf of their respective entities, Anderson and CDF.

24           43.      If Plaintiffs had been advised of the true situation Anderson found itself in

25 on July 31, 2017 (that is, the inability to fund the loan), Plaintiffs would not have accepted

26 the Anderson offer.

27           44.      Instead, Plaintiffs would have utilized the Northlight funding and would

28 have closed escrow on the purchase within the time perimeters desired by the Sellers.

45.     Plaintiffs' reliance on the misrepresentations of the Defendants has resulted in the Plaintiffs losing the ability to purchase the Property and develop the Resort & Spa.

46.     Defendants were fully aware of the uniqueness of this particular Property location.

47.     Prior to issuing the offer and the LOC, Defendants had been provided with the Business Plan for the Resort & Spa (hereinafter referred to as the "Plan"), which is replete with references to the truly unique nature of the Resort & Spa location.

48.     At page 21 of the Plan, it is specifically noted: "that a direct comparable does not exist in Sedona, as this is the largest assembled project in Sedona."

49.     There can be no question that Defendants knew of the fact that Plaintiffs could not build this project anywhere else other than on the Property to be acquired using the funds promised by Anderson.

50.     Defendants knew that if the agreed upon funding was not provided on the September 8, 2017, closing date, that Plaintiffs would suffer, at a minimum, the following damages:

a. Plaintiffs would lose the opportunity to purchase Property;

b. Plaintiffs would lose their cash deposit of $4.6 Million;

c. Plaintiffs would lose the "soft costs" already advanced in the amount of at least $3 Million; and

d. Plaintiffs would lose the profit opportunity as set out in the Business Plan.

51.     Despite having the knowledge referred to in the preceding paragraph, Defendants made repeated material misrepresentations to the Plaintiffs regarding Anderson's ability to fund the thirty-five million dollar ($35,000,000.00) loan.

52.     The Plan also included extensive, detailed projections of the income to be generated from the Resort & Spa project as well as projections regarding the future value of the Resort & Spa over the course of the first five (5) years of the project.

53.     These projections detailed a value of between $598,228,773.00 and $782,299,165.00 at the end of year five (5).

54.     Defendants acknowledge the validity of these projections as indicated by the Defendants desire to have a twenty-five percent (25%) equity interest in the project (as set forth in the 07/31/2017 offer) and further by signing off on all due-diligence including the Plan and projected values.

## COUNT ONE
### (Breach of Contract Against Anderson and CDF)

55.     Plaintiffs hereby incorporate by reference each and every allegation set forth in paragraphs 1 through 54, inclusive, and reallege them as if they were fully set forth herein.

56.     Plaintiffs entered into a contractual agreement with Anderson in the form of the LOC and related documents.

57.     Plaintiffs have duly performed or satisfied all conditions, promises and obligations required to be performed or satisfied by them in accordance with the terms and conditions of the agreements set forth herein relating to Anderson.

58.     Despite a contractual obligation to do so, Anderson has failed to complete the funding of the thirty-five million dollar ($35,000,000.00) loan, nor funding any portion of the loan, thereby breaching the parties' agreements.

59.     Additionally, Plaintiffs entered into a contractual agreement with CDF in the form of a Fee Agreement dated July 25, 2017.

60.     Plaintiffs have duly performed or satisfied all conditions, promises and obligations required to be performed or satisfied by them in accordance with the terms and conditions of the Fee Agreement with CDF.

61.     Pursuant to the Fee Agreement, CDF contractually agreed to "source and pre-qualify the lender…"

62.     Despite the contractual obligation to do so, CDF failed to adequately source and pre-qualify Anderson as the lender for this transaction, inasmuch as such efforts

would have revealed that Anderson was unable to fund the loan due to the issue with Barclays.

63.     As a direct and proximate result of Anderson and CDF's breach of the agreements, Plaintiffs have suffered damages in an amount to be proven at trial, but in no event less than seven million six hundred thousand dollars ($7,600,000.00).

64.     This matter arises out of a contract, express or implied, and in accordance with Arizona Revised Statute Section 12-341.01, Plaintiffs are entitled to reimbursement of their attorneys' fees and costs incurred in this litigation.

WHEREFORE, Plaintiffs pray for judgment against Anderson and CDF as follows:

(a)     For damages in an amount to be proven at trial, but in no event less than seven million six hundred thousand dollar ($7,600,000.00), plus prejudgment interest at the maximum allowable legal rate, plus interest at the maximum allowable legal rate on that amount from the time of judgment until satisfied in full; and

(b)     For reimbursement of Plaintiffs attorneys' fees and court costs incurred in this litigation, together with interest at the maximum allowable legal rate from the date the judgment until paid in full; and

(c)     For such other and further relief as the Court deems just and proper.

**COUNT TWO**
**(Breach of Implied Covenant of Good Faith and Fair Dealing**
**Against Anderson and CDF)**

65.     Plaintiffs hereby incorporate by reference each and every allegation set forth in paragraphs 1 through 64, inclusive, and reallege them as if they were fully set forth herein.

66.     The law implies a covenant of good faith and fair dealing in every contract. *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569.

/ / /

67.     The essence of the covenant of good faith and fair dealing is that it creates in each party to a contract a duty to not act in a manner to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.  *Id.*

68.     Plaintiffs entered into a contractual agreement with Anderson in the form of the LOC and related documents.

69.     Anderson has acted in bad faith by not giving equal consideration to the interest of Plaintiffs as they have their own interests.

70.     Defendants have wrongfully and intentionally breached the duty of good faith and fair dealing by failing to fund the thirty-five million dollar ($35,000,000.00) loan by the agreed upon closing date, the benefits to which Plaintiffs are entitled under the terms of their agreement and contract with Defendants.

71.     Additionally, Plaintiffs entered into a contractual agreement with CDF in the form of a Fee Agreement dated July 25, 2017.

72.     CDF has wrongfully and intentionally breached the duty of good faith and fair dealing by failing to adequately source and pre-qualify Anderson as the lender for this transaction, inasmuch as such efforts would have revealed that Anderson was unable to fund the loan due to the issue with Barclays..

73.     Defendants' breaches of the covenant of good faith and fair dealing have directly and proximately resulted in Plaintiffs suffering damages in an amount to be proven at trial, but in no event less than seven million six hundred thousand dollars ($7,600,000.00).

74.     This matter arises out of a contract, express or implied, and in accordance with Arizona Revised Statute Section 12-341.01, Plaintiffs are entitled to reimbursement of their attorneys' fees and costs incurred in this litigation.

WHEREFORE, Plaintiffs pray for judgment against Anderson and CDF as follows:

(a)     For damages in an amount to be proven at trial, but in no event less than seven million six hundred thousand dollar ($7,600,000.00), plus prejudgment interest at the maximum allowable legal rate, plus interest at

the maximum allowable legal rate on that amount from the time of judgment until satisfied in full; and

(b) For reimbursement of Plaintiffs attorneys' fees and court costs incurred in this litigation, together with interest at the maximum allowable legal rate from the date the judgment until paid in full; and

(c) For such other and further relief as the Court deems just and proper.

## COUNT THREE
**(Negligent Misrepresentation Against All Defendants)**

75. Plaintiffs hereby incorporate by reference each and every allegation set forth in paragraphs 1 through 74, inclusive, and reallege them as if they were fully set forth herein.

76. Bowen, Buquing and Hakobyan, acting on their own behalf and under the direction of and on behalf of Anderson, CDF and Hakobyan, made certain statements to Plaintiffs that that were false representations of a material fact, including but not necessarily limited to:

(a) Representing that Anderson had sufficient assets and sufficient funds to fund the $35,000,000.00 loan on the agreed upon closing date;

(b) Representing that Anderson had the present ability to disburse the funds on the agreed upon closing date; and

(c) Representing that Anderson's inability to fund the loan on the initial closing date of August 31, 2017 was due to circumstances beyond its control.

77. At the time that the referenced statements were made, Bowen, Buquing and Hakobyan, acting on their own behalf and under the direction of and on behalf of Anderson, CDF and Hakobyan, intended or could reasonably foresee that the Plaintiffs would on those statements.

78. In making the referenced statements, Bowen, Buquing and Hakobyan, acting on their own behalf and under the direction of and on behalf of Anderson, CDF and

Hakobyan, failed to exercise reasonable care.

79.     Plaintiffs relied upon the statements made by Bowen, Buquing and Hakobyan, acting on their own behalf and under the direction of and on behalf of Anderson, CDF and Hakobyan.

80.     Plaintiffs' reliance was justified, given Bowen, Buquing and Hakobyan's (acting on their own behalf and under the direction of and on behalf of Anderson, CDF and Hakobyan) position of knowledge on the funding of the loan.

81.     Plaintiffs' reliance upon the referenced statements resulted in Plaintiffs suffering damages in an amount to be proven at trial, but in no event less than seven million six hundred thousand dollars ($7,600,000.00).

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a)     For damages in an amount to be proven at trial, but in no event less than seven million six hundred thousand dollar ($7,600,000.00), plus prejudgment interest at the maximum allowable legal rate, plus interest at the maximum allowable legal rate on that amount from the time of judgment until satisfied in full; and

(b)     For such other and further relief as the Court deems just and proper.

## COUNT FOUR
### (Concealment Against All Defendants)

82.     Plaintiffs hereby incorporate by reference each and every allegation set forth in paragraphs 1 through 81, inclusive, and reallege them as if they were fully set forth herein.

83.     Defendants Bowen, Buquing and Hakobyan, acting on their own behalf and under the direction of and on behalf of Anderson, CDF and Hakobyan, concealed certain facts including, but not necessarily limited to:

(a) The fact that Anderson's assets were not sufficient to permit the funding of the $35,000,000.00 loan on the agreed upon closing date;

(b) The fact that Anderson's funds had been placed on hold by Barclay's

Bank, UK;

(c) The fact that Anderson's funds had been placed on hold by Barclay's Bank, UK, prior to the issuance of the offer extended by Defendants on July 31, 2017;

(d) The fact that Anderson could not meet the initial closing date of August 31, 2017 due to the hold on Anderson's funds; and

(e) The fact that at the time that Anderson extended the August 31, 2017 closing date to September 8, 2017, Anderson knew that the hold on its funds had not been released.

84. Defendants had a duty to disclose the referenced information.

85. Defendants intentionally failed to disclose this information, which was material, and Plaintiff could not have reasonably discovered this information.

86. By concealing these facts, Defendants intended to deceive Plaintiffs.

87. Plaintiffs relied upon Defendants not to conceal this information, and that reliance was reasonable under the circumstances.

88. The concealments were a substantial factor in causing damages to Plaintiffs, and did in fact cause damages to Plaintiffs as set forth in the General Allegations above.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a) For damages in an amount to be proven at trial, but in no event less than seven million six hundred thousand dollar ($7,600,000.00), plus prejudgment interest at the maximum allowable legal rate, plus interest at the maximum allowable legal rate on that amount from the time of judgment until satisfied in full; and

(b) For such other and further relief as the Court deems just and proper.

///

**COUNT FIVE**
**(Fraud Against All Defendants)**

89.     Plaintiffs hereby incorporate by reference each and every allegation set forth in paragraphs 1 through 88, inclusive, and reallege them as if they were fully set forth herein.

90.     Defendants Bowen, Buquing and Hakobyan, acting on their own behalf and under the direction of and on behalf of Anderson, CDF and Hakobyan, knowingly made certain statements to Plaintiffs that that were false representations (known to be false to Defendant) of a material fact to Plaintiffs, including but not necessarily limited to:

(a) Representing that Anderson had sufficient assets and sufficient funds to fund the $35,000,000.00 loan on the agreed upon closing date;

(b) Representing that Anderson had the present ability to disburse the funds on the agreed upon closing date; and

(c) Representing that Anderson's inability to fund the loan on the initial closing date of August 31, 2017 was due to circumstances beyond its control.

91.     At the time that the referenced statements were made, Bowen, Buquing and Hakobyan, acting on their own behalf and under the direction of and on behalf of Anderson, CDF and Hakobyan, intended or could reasonably foresee that the Plaintiffs would rely on those statements.

92.     At the time that the referenced statements were made, Plaintiffs were ignorant of their falsity.

93.     Plaintiffs relied upon the statements made by Bowen, Buquing and Hakobyan, acting on their own behalf and under the direction of and on behalf of Anderson, CDF and Hakobyan.

94.     Plaintiffs' reliance was justified, given Bowen, Buquing and Hakobyan's (acting on their own behalf and under the direction of and on behalf of Anderson, CDF and Hakobyan) position of knowledge on the funding of the loan.

95.     Plaintiffs' reliance upon the referenced statements resulted in Plaintiffs suffering damages in an amount to be proven at trial, but in no event less than seven million six hundred thousand dollars ($7,600,000.00).

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a)     For damages in an amount to be proven at trial, but in no event less than seven million six hundred thousand dollar ($7,600,000.00), plus prejudgment interest at the maximum allowable legal rate, plus interest at the maximum allowable legal rate on that amount from the time of judgment until satisfied in full; and

(b)     Punitive damages in an amount sufficient to deter similar action in the future; and

(c)     For such other and further relief as the Court deems just and proper.

DATED this 15st day of May, 2018.

WITHEY MORRIS, PLC

By: _____
David R. Baker
D. Alexander Baker
*Attorneys for Plaintiffs*

## **VERIFICATION**

STATE OF                              )
                                      ) ss.
County of                             )

_____, being first duly sworn upon oath, deposes and says:

That he is a representative of Plaintiff in the foregoing action, and has the authority to make these declaration; that he has read the Verified Complaint attached hereto, is familiar with the contents and affirms that the same is true to the best of his personal knowledge, except as to those matters stated upon information and belief, and as to those matters, he believes them to be true.


_____
By:_____
Its:_____


Subscribed and sworn to before me this _____ day of _____, _____, by _____, representative of Plaintiff in the above-entitled action.


_____
Notary Public